David Martin AWBREY, and John Carl
Gladys, Plaintiffs,

v.

The GREAT ATLANTIC & PACIFIC
TEA COMPANY, INC., Defendant.

R. Kevin ANDERSON; Darryl W. Brown;
David W. Krauss; Ricky K. Poole; Ma-
rie E. Baggett; and Vivian C. Heath,
Plaintiffs,

v.

The GREAT ATLANTIC & PACIFIC
TEA COMPANY, INC., Defendant.

Marvin L. DOW, Plaintiff,

v.

The GREAT ATLANTIC & PACIFIC
TEA COMPANY, INC., Defendant.

Roger Allen FLAHERTY; Frank Stack-
house; Willis Penn; Marbuary Farmer,
Jr.; Harrison Phillips; Brenda J. Smith;
and Daniel Clifford Hambrick, Plain-
tiffs,

v.

The GREAT ATLANTIC & PACIFIC
TEA COMPANY, INC., Defendant.

Civ. A. Nos. C78–597A, C78–2009A,
C79–2118A and C80–303A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 30, 1980.

N. David Buffington and James D. Fagan, Jr., Stanford, Buffington, Fagan & Giolito, Atlanta, Ga., for plaintiffs in case C78–597A and C80–303A.

James L. Ford, Wills & Ford, Atlanta, Ga., for plaintiffs in case nos. C78–2009A and C79–2118A.

Eugene C. Partain and Thomas D. Harper, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendant in all cases.

### ORDER

SHOOB, District Judge.

Defendant The Great Atlantic and Pacific Tea Company has moved for summary judgment in its favor in these consolidated cases. It does so on two separate grounds:

### 1.

There is no evidence that any plaintiff had a wire communication intercepted, disclosed, or used.

### 2.

Eleven of the plaintiffs filed their actions more than two years after the last possible date of any alleged wiretapping activities at a store in which they were employed.

Defendant's Motion for Summary Judgment, page 2.

For the reasons set forth below, defendant's motion is DENIED.

### A. First Ground.

Defendant strenuously argues that after (up to) twenty-nine months of discovery, plaintiffs have produced no evidence that any of them has ever had a wire communication intercepted, disclosed or used. That contention, along with argument in the motion and the brief, is somewhat misleading. It would be more accurate to say that plaintiffs have not produced evidence of a single *specific* phone call which was overheard by means of a wiretap. However, there is evidence in the record that wiretaps were installed on store business phones by defendant's employees in stores where plaintiffs worked, at the time they worked; that most if not all of the plaintiffs made personal phone calls on a daily basis from the tapped telephones during the period the tap was in place; and that at times, at least, phone calls were tapped, recorded, and replayed later on an indiscriminate basis.

Defendant A&P bases its argument that plaintiffs' case is insufficiently specific on the following passage from *Broadway v. City of Montgomery*, 530 F.2d 657, 659 (5th Cir. 1976):

In order to prevail under 18 U.S.C. § 2520 the remaining appellants must show that the oral communications were in fact intercepted, disclosed or used by defendants.

Defendant argues that the words "in fact," coupled with the *Broadway* plaintiffs' lack of first hand knowledge that defendants were involved in the wiretapping, mean that "the absence of direct, admissible evidence of the interception, disclosure, or usage of plaintiffs' personal conversations mandates the entry of summary judgment," Defendant's Brief at page 8.[1]

This argument cannot prevail for two reasons. First, the facts in *Broadway* are entirely distinguishable from those in the instant case. The grant of summary judgment to defendants in *Broadway* was based on the absence of any proof that *defendants* in that case were involved in the wiretapping. The depositions of the plaintiffs in *Broadway* "conclusively and affirmatively show that they had no factual knowledge to substantiate the charge that defendants heard or listened to the tapes," *Broadway, supra,* 530 F.2d at 660. While most of the plaintiffs here have little or no personal knowledge of the wiretapping incidents complained of, others have so testified.

Second, defendant's argument that plaintiffs' lack of specificity in their allegations warrants the granting of defendant's motion for summary judgment flies in the face of both the statute and the nature of the tort. 18 U.S.C. § 2520 provides:

Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher:

---

**1.** Defendant also relies on *Bufalino v. Michigan Bell Telephone Company,* 404 F.2d 1023, 1029 (6th Cir. 1968) for the proposition that specific facts concerning the wiretapping must be shown by plaintiffs. However, plaintiff Bufalino had only the "bare conclusory allegations of his complaint" to offer. The instant case is quite different in that respect. *See, inter alia,* the depositions of Vardis Benson and Joseph Hutto.

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter or under any other law.

That the statute provides for liquidated damages "at the rate of $100 a day for each day of violation" clearly contemplates the sort of continued, indiscriminate wiretapping of private telephone conversations plaintiffs have alleged here.

■ Moreover, the fact that most of the plaintiffs have no personal, first-hand knowledge that any particular phone call was tapped is not remarkable. Indeed, it would be unusual if anyone other than defendant, and its employees involved in the wiretapping, had knowledge of the specific incidents of wiretapping. The intentional tort of wiretapping created by 18 U.S.C. § 2520 is obviously one which by its very nature is unknown to the plaintiff. The usual way a wiretap victim could acquire personal, first-hand knowledge of a particular act of wiretapping would either be (1) by listening at some later time to a recorded telephone conversation or (2) by somehow seeing the tapping done, through carelessness of the tortfeasor or otherwise. Neither occurrence is likely if the tort is successful. Indeed, the more successful the tortfeasor is, the less likely it is that plaintiff will know of it.

■ In sum, though it is conflicting, the evidence in the record tends to show that telephones the plaintiffs used were tortiously tapped by defendant's personnel. If no valid defenses are available to defendant and if the jury concludes by a preponderance of the evidence that defendant has "intercepted, disclosed or used" plaintiffs' "wire or oral communication[s]," then plaintiffs may be entitled to judgment and damages as specified in the statute.

## B. Second Ground.

Defendant also argues that the applicable statute of limitations bars the actions of eleven of the sixteen named plaintiffs. Defendant argues that the applicable limitations period is two years, measured from "the last possible date of any alleged wiretapping activities at a store in which plaintiffs were employed," Defendant's Motion for Summary Judgment, page 2.

■ 18 U.S.C. § 2520 provides no statute of limitations. Accordingly, this Court must look to the applicable state limitations period and its tolling provisions. *See Moore v. Tangipahoa Parish School Board*, 594 F.2d 489, 495 (5th Cir. 1979). But in determining when the cause of action accrued for this federal cause of action, this Court must look to federal law. *See Cole v. Kelley*, 438 F.Supp. 129, 138 (C.D.Cal.1977); and *Clark v. United States*, 481 F.Supp. 1086, 1094 (S.D.N.Y.1979).

■ Defendant A&P contends, and plaintiffs apparently do not dispute, that the limitations period for the most nearly analogous state cause of action, the tort of invasion of privacy, is the general two-year limitations period for torts. Ga.Code Ann. § 3–1004. The parties disagree as to (1) when the cause of action accrued and (2) whether the running of the limitations period was tolled by any action or inaction of defendant. No Georgia cases have addressed these questions.

Defendant argues that the following principles governing the statute of limitations apply to this case and to the question of when plaintiffs' causes of action accrued and the statute began to run.

"When the question is raised as to whether an action is barred by a statute of limitations, the true test to determine when the cause of action accrued is 'to ascertain the time when the plaintiff could first have maintained his action to a successful result' ... *A right of action has its inception from the time there has been a breach of duty*; and this would entitle the party to file a suit for the breach, without regard to whether any

actual damage had in fact resulted." *Mobley v. Murray County*, 178 Ga. 388(1), 173 S.E. 680. (Emphasis supplied.)

"The test to be generally applied in determining when the statute of limitations begins to run against an action sounding in tort is whether the act causing the damage is in and of itself an invasion of some right of the plaintiff, and thus constitutes a legal injury and gives rise to a cause of action. If the act complained of does not in and of itself constitute an invasion of some legal right, but a recovery is sought only on account of damage subsequently accruing from and consequent upon an act not in itself tortious, the cause of action will be taken to accrue and the statute to begin to run only when the resultant damage is sustained. But if the act causing such subsequent damage [in this case, failure to disclose that the lot was on a landfill] is of itself unlawful in the sense that it constitutes a legal injury to the plaintiff, and is thus a completed wrong, the cause of action accrues and the statute begins to run from the time such an act is committed, however slight the damage then may be." *Silvertooth v. Shallenberger*, 49 Ga.App. 133(2), 174 S.E. 365; *Trammell v. Ga. Power Co.*, 52 Ga.App. 514(1), 183 S.E. 825.

"Contrary to the contention of the plaintiff, its right of action against the defendants accrued when the defendants committed the negligent acts complained of and not when the building ultimately collapsed as a result of such negligence. The alleged negligent design and construction of the building in and of itself constituted a legal injury to the plaintiff, however slight the actual damages may have been at the time; this is true, notwithstanding the fact that the plaintiff had no knowledge of such wrongs having been committed until the roof collapsed some four years later. Mere ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitation." *Wellston Co. v. Sam N. Hodges, Jr., & Co.*, 114 Ga.App. 424, 425, 151 S.E.2d 481; *Everhart v. Rich's,*

*Inc.*, 229 Ga. 798(3), 803, 194 S.E.2d 425, See *Caroline Realty Investment, Inc. v. Kuniansky*, 127 Ga.App. 478, 482, 194 S.E.2d 291.

A plaintiff must exercise reasonable diligence to learn of the existence of a cause of action. *Crawford v. McDonald*, 125 Ga.App. 289, 290, 187 S.E.2d 542. *Webb v. Lewis*, 133 Ga.App. 18, 19–21, 209 S.E.2d 712 (1974). These are the general principles. Defendant argues that plaintiffs' cause of action, defendant's alleged wiretapping, was an invasion of plaintiffs' legal right to privacy which started the running of the statute; and that since eleven of the plaintiffs filed suit more than two years after the last time they could have been tapped, assuming plaintiffs' allegations to be true, the statute of limitations bars their actions. Defendant further argues that since fraud sufficient to toll the statute must be by positive affirmative act and not by mere silence, that there has been no tolling of the statute. *See Webb v. Lewis, supra*, 133 Ga.App. at 21–22, 209 S.E.2d 712.

Courts have struggled with the question of how to apply the statute of limitations to civil wiretap actions. *See, e. g., Bufalino v. Michigan Bell Telephone Company*, 404 F.2d 1023, 1028–29 (6th Cir. 1968); *Clark v. United States, supra*, 481 F.Supp. at 1093–96; *Smith v. Nixon*, 606 F.2d 1183, 1190–91 (D.C.Cir.1979). One important guide in applying a state statute of limitations to a federal cause of action is that the "state statute of limitations which best effectuates federal policy should be applied." *Bufalino, supra*, 404 F.2d at 1028. Fortunately, in effectuating the federal policy behind 18 U.S.C. § 2520, this Court will also be serving the policy of the state of Georgia. See Part C., Implied Cause of Action under Georgia Law, *infra*.

■ In applying a statute of limitations to a newly-created cause of action, a court ought to take into consideration the nature of the tort. The intentional tort of wiretapping is one in which the tortfeasor invades the privacy of another by electroni-

cally overhearing private phone conversations without the permission or knowledge of either party to the conversation. The harm consists in the tortfeasor's learning what the aggrieved persons intended to pass only between themselves. While the statute also makes the tortfeasor liable for disclosure or other use of the overheard communication, the mere intercepting and listening is a tort. The tort is surreptitious in nature and unless the tortfeasor discloses the communication or otherwise uses it in a way that makes the aggrieved person aware that his or her communications have been intercepted, the aggrieved person may never learn of the tort. In fact, the more successful tortfeasor is, the less likely the victim is to discover the tort. *See Smith v. Nixon, supra*, 606 F.2d at 1191.

While the four reported cases which have discussed the issue of the statute of limitations vis a vis the wiretap tort have varied in their approaches, they have all reached the same result: the statute of limitations does not run until the aggrieved person discovers or by the exercise of due diligence could have discovered the basis of the cause of action. *See Smith v. Nixon, supra*, 606 F.2d at 1190–91; *Clark v. United States, supra*, 481 F.Supp. at 1093–96 (cause of action accrued when the wrongs alleged were capable of being learned by plaintiffs, that is, at the time they were committed, but statute may be tolled by affirmative acts of fraudulent concealment); *Cole v. Kelley, supra*, 438 F.Supp. at 138–40 (tolling of statute of limitations due to fraudulent concealment ends when "plaintiff acquires knowledge, or could by the exercise of due diligence [acquire knowledge], that he may have a potential claim"); and *Alioto v. Holtzman*, 54 F.R.D. 602 (E.D.Wis.1972) (the tort of wiretapping being broadly analogous to fraud, "the cause of action is not ripe until the injured party becomes aware of the fraud").

■ Keeping in mind the nature of this tort, which is *sui generis* in that the aggrieved person may never learn that his or her privacy has been invaded by the wiretap, this Court concludes that the cause of action *accrues* when the plaintiff discovers, or by the exercise of due diligence could have discovered, that his or her phone calls were being intercepted. *Smith v. Nixon, supra*, 606 F.2d at 1190.[2] This rule seems more in keeping with the nature of the tort, which is that it is kept secret from the plaintiff. If the tort is successfully done, the tortfeasor may not have to perform any affirmative acts to conceal the wiretap, and thus trigger the tolling of the statute for fraudulent concealment.

■ Applying this rule to the instant actions, all four of the complaints in these consolidated actions were filed less than two years after the FBI raided the grocery stores with the attendant publicity that would have provided all plaintiffs with knowledge of the cause of action. What knowledge plaintiffs had prior to the March, 1978 raids by the FBI, and whether rumors or other information would require plaintiffs to exercise due diligence to discover whether their employer was illegally wiretapping their phone calls, are questions for the jury.

■ Defendant also argues that one plaintiff, Willis Penn, was never an employee at a store whose phone was allegedly tapped. But plaintiff Penn's affidavit indicates that he regularly called an employee at a "bugged" store. Callers at either end of a tapped telephone have a cause of action against the wiretapper. *See Philadelphia Resistance v. Mitchell*, 58 F.R.D. 139, 147 (E.D.Pa.1972).

**C. Implied Cause of Action under Georgia Law.**

■ The complaints in cases numbered C78–597A and C80–303A contain counts for an implied cause of action under Ga.Code

---

**2.** While the time of accrual of a cause of action for a federally created right is a federal question, the Court notes that its approach is consistent with the common-sense view of the Georgia courts in analogous situations. *See, e. g., Everhart v. Rich's, Inc.*, 229 Ga. 798, 194 S.E.2d 425 (1972) (headnote 2).

Ann. § 26–3001 et seq. Defendant has moved the Court to dismiss these counts on the ground that there is no such implied cause of action under Georgia law. This contention by defendant is also without merit.

(1) Georgia was the first state in which the *courts* recognized the right of privacy. *Pavesich v. New England Life Insurance Company*, 122 Ga. 190, 50 S.E. 68 (1905). *See Prosser, Torts* at 803–04 (4th ed. 1971) (*Pavesich* the "leading case" on the right of privacy). Georgia courts have traditionally been solicitous of this right.

(2) While there have been no reported cases in state courts concerning the wiretapping tort, as early as 1965 the Fifth Circuit Court of Appeals concluded "that Georgia recognizes a cause of action for invasion of privacy through wiretapping irrespective of whether the information obtained is published or disclosed." *Fowler v. Southern Bell Telephone and Telegraph Company*, 343 F.2d 150, 156 (5th Cir. 1965) (Bell, J.). *See also Briggs v. American Air Filter Company*, 455 F.Supp. 179, 182 (N.D. Ga.1978).

(3) The statute itself contemplates the bringing of civil actions for illegal wiretapping. Ga.Code Ann. § 26–3004(*l*) provides that

(c) A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any *civil* or criminal action brought under this Chapter or under any other law. (Emphasis added.)

Thus the legislature and the statute contemplate the bringing of civil actions for the wiretapping tort.

## CONCLUSION

Defendant's motion for summary judgment is DENIED.

IT IS SO ORDERED.