Donald T. WEBER, Plaintiff-Appellant and
Cross-Respondent,†

v.

CITY OF CEDARBURG, Defendant-Respondent and
Cross-Appellant,

Eugene C. BOEVERS, Roland R. Church and
Jacqueline S. Weber, Defendants.

Court of Appeals

*No. 34–965. Argued January 30, 1985.—Decided May 8, 1985.*
(Also reported in 370 N.W.2d 791.)

† Petition to review granted.

For the plaintiff-appellant and cross-repondent, there were briefs and oral argument by *Mark J. Rogers* of *Angermeier & Rogers,* of Milwaukee.

For the defendant-respondent and cross-appellant, there were briefs by *Jeffrey A. Schmeckpeper* and *Patti J. Kurth* of *Kasdorf, Dall, Lewis & Swietlik, S.C.,* of Milwaukee. Oral argument by *Jeffrey A. Schmeckpeper.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   Donald T. Weber appeals the trial court's judgment dismissing his 42 U.S.C. § 1983 claims against the City of Cedarburg. Weber claims the trial court erred in holding his complaint failed to state a claim upon which relief can be granted. We agree with the trial court's interpretation and affirm.

Weber's complaint alleges that he was the victim of a conspiracy between two Cedarburg police officers and his then wife, Jacqueline Weber. He claims that the officers, acting under color of law and according to official policy of the City of Cedarburg, conducted surveillance of Weber. The surveillance consisted of following Weber to softball games and taverns, taking notes, running license checks on cars in the parking lots of the places

Weber frequented and going to Weber's employer's apartment "for the purpose of illegally entering and searching said apartment." Weber asserts that the officers justified these activities by falsely characterizing Weber as a drug user and distributor. He maintains that the officers' conduct violated his constitutional rights to be free from search and seizure without probable cause, as well as a violation of his fourteenth amendment due process rights.

The trial court dismissed the complaint,[1] holding that there was no showing that the plaintiff was deprived of a federal right and that no actual specific harm to the plaintiff was alleged. The court allowed twenty days for Weber to replead; Weber chose instead to appeal the court's decision.

Approximately a month after the trial court issued its decision, the Wisconsin Supreme Court released its decision in *Enright v. Board of School Directors*, 118 Wis. 2d 236, 346 N.W.2d 771, *cert. denied*, —— U.S. ——, 83 L. Ed. 2d 301 (1984). *Enright* involved a 42 U.S.C. § 1983 action brought by the parents of a murdered child against the City of Milwaukee School Board, alleging negligence on the part of a school board employee. After undertaking an extensive analysis of the United States Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527 (1981), the *Enright* court concluded that negligent conduct by government officials will not form a basis for a section 1983 claim if the state has provided a tort remedy as a means of redress for the deprivation of

---

[1] This case has been appealed once before. In an unpublished opinion released December 21, 1983, this court reversed the trial court's dismissal of the 42 USC § 1983 claims. The trial court had dismissed the claims for failure to comply with sec. 893.80 (1) (b), Stats. We held current Wisconsin case law does not require compliance with a state procedure when bringing a section 1983 action. Upon remand, the trial court proceeded to consider the other grounds presented in Cedarburg's motion to dismiss.

constitutional rights. *Enright* at 255–56, 346 N.W.2d at 781. In other words, if adequate remedies exist under state law, the requirements of procedural due process have been satisfied and the aggrieved party cannot proceed under a 42 U.S.C. § 1983 claim.[2]

Cedarburg urges this court on appeal to extend the *Enright* decision to intentional conduct on the part of a government official. Cedarburg notes that there is nothing in the *Enright* decision suggesting that the supreme court intended to limit *Enright* solely to claims of negligent conduct. The City also points to the recent United States Supreme Court decision of *Hudson v. Palmer*, 468 U.S. ——, 82 L. Ed. 2d 393 (1984), which expressly holds that the *Parratt* decision applies to intentional conduct.

> For intentional, as for negligent deprivations of property by state employees, the State's action is not complete until and *unless it provides or refuses to provide a suitable postdeprivation remedy.* [Emphasis added, footnote omitted.]

*Id.* at ——, 82 L. Ed. 2d at 407–08. Given the recent *Hudson* decision, the City asserts that the logic of *Enright* must extend to intentional conduct on the part of government employees as well. We cannot agree.

It is precisely because the state fails to provide adequate relief that Weber's section 1983 action is not pre-

[2] Because of the perceived application of the *Enright* decision, oral argument was held in this case. At oral argument, Weber argued Cedarburg waived its right to rely on the applicability of *Enright* because it failed to raise this issue at the trial court level. Although Weber acknowledges *Enright* was not released until after the trial court issued its decision, he argues Cedarburg could have raised the issue by relying on *Parratt* and the *Enright* court of appeals decision which was released in June of 1983. Because the issue involves solely a question of law and has been briefed and argued by both parties, we deem it is of sufficient importance to merit consideration. *See Wirth v. Ehly*, 93 Wis. 2d 433, 444, 287 N.W.2d 140, 146 (1980).

cluded by the *Enright* decision. Section 893.80(4), Stats., establishes municipal immunity for the intentional torts committed by its employees. This automatically forecloses an action against the City of Cedarburg. Because Wisconsin's own statutes expressly preclude a cause of action against a municipality for the intentional torts of its employees, the state does not provide any postdeprivation remedy for Weber against the City of Cedarburg.

Wisconsin does have a state statute which requires a political subdivision to pay damages and costs entered against an officer when that individual has been found in violation of the law while acting within the scope of his or her employment. Sec 895.46(1), Stats. Case law has made clear, however, that a finding with regard to an action under "color of law" pursuant to 42 U.S.C. § 1983 is not identical to a finding that specific acts were done "within the scope of employment" of a public official or employee. *Cameron v. City of Milwaukee,* 102 Wis. 2d 448, 456, 307 N.W.2d 164, 168 (1981). Because the *Cameron* court could not equate conduct within the scope of a municipal or state employees' employment and conduct which may be termed "under color of law," sec. 895.46(1) cannot be used as a state substitute for section 1983. This is because "color of law" is a much larger concept than "scope of employment." Therefore, sec. 895.46(1) does not provide a suitable postdeprivation remedy for Weber's claims.

Having clarified the scope of *Enright,* we now turn to the trial court's dismissal of the complaint. The court dismissed Weber's claims against Cedarburg on the ground that the defendant's conduct did not deprive Weber of any right, privilege or immunity secured by federal law or the United States Constitution.

A pleading challenged by a motion to dismiss should be liberally construed with a view to achieving substantial justice. *First National Bank of Wisconsin Rapids v. Dickinson*, 103 Wis. 2d 428, 432, 308 N.W.2d 910, 912 (Ct. App. 1981). A claim should not be dismissed "unless it appears to a certainty that no relief can be granted under any set of facts that [the] plaintiff can prove in support of his allegations." *Morgan v. Pennsylvania General Insurance Co.*, 87 Wis. 2d 723, 732, 275 N.W.2d 660, 664 (1979) (citations omitted). Whether the facts alleged in a pleading state a claim on which relief can be granted presents an issue of law which we review independently on appeal. *First National Bank* at 433, 308 N.W.2d at 912.

There are two elements essential to a 42 U.S.C. § 1983 action: (1) the defendant's conduct must be committed under color of state law, and (2) this conduct must deprive someone of rights, privileges or immunities secured by federal law or the United States Constitution. *Schatzke v. Earl*, 115 Wis. 2d 546, 547–48, 340 N.W.2d 745, 746 (Ct. App. 1983). The trial court, in its decision, held that the second element was lacking in Weber's complaint.

Weber claims the following violations were adequately alleged in his complaint:

(1) The right to be free from a search and seizure without reasonable or probable cause and the right to be let alone and to be free from unwarranted governmental intrusion into his private life;

(2) To be free from the loss, without due process, of his liberty interest in avoiding the unreasonable and arbitrary governmental intrusion on his privacy and right to be let alone; and

(3) To be free from the loss, without due process of his liberty and property interest in his reputation, business and profession.

### (1) Fourth Amendment Violation

Weber alleges no search or seizure of his person, house, papers or effects by the defendants without a warrant or other lawful authority. Rather, he asserts that the defendants violated the fourth amendment by following him to softball games and taverns and by going to Weber's employer's apartment "for the purpose of illegally entering and searching said apartment." It is not alleged that the defendants ever actually entered the apartment. We agree with the trial court that no fourth amendment violation has been stated.

All surveillance is not per se violative of constitutional rights. *Glaros v. Perse,* 628 F.2d 679, 684 (1st Cir. 1980). Law enforcement officers are entitled to reasonably "see what there is to be seen and to hear what there is to be heard, provided that the Fourth Amendment is complied with." *Martinez v. Winner,* 548 F. Supp. 278, 335 (D. Colo. 1982) (footnotes omitted). " 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' " *Id.,* quoting *Katz v. United States,* 389 U.S. 347, 351 (1967). We do not perceive the data gathering of events which took place in a public forum in and of itself to be violative of Weber's fourth amendment rights. *See Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate,* 519 F.2d 1335, 1337–38 (3d Cir. 1975). Indeed, Weber says nothing about the conduct of the individual defendants to distinguish their behavior from that of an ordinary nosey neighbor. *See Glaros* at 684. This, we hold, is insufficient to constitute a violation of Weber's constitutional rights.[3]

---

[3] Weber relies on *Giancana v. Johnson,* 335 F.2d 366 (7th Cir. 1964), *cert. denied,* 379 U.S. 1001 (1965), to support his claim of

### (2) Loss of Liberty Interest and Governmental Intrusion in Private Life

Again, Weber asserts that the "stalking" activities of the defendants violated his constitutional right to be left alone. The right to privacy is a relatively narrow right, limited to protection against government interference in matters such as marriage, procreation, contraception, child rearing and education. *Smith v. Jordan,* 527 F. Supp. 167, 172 (S.D. Ohio 1981), citing *Paul v. Davis,* 424 U.S. 693, 713 (1976). While recognizing that the due process clause of the fourteenth amendment establishes a sphere of personal liberty for every individual, we nevertheless conclude that Weber's allegations with respect to the invasion of his privacy do not rise to establish a violation of a constitutionally protected right. Softball games and taverns do not fall within constitutionally protected perimeters.

### (3) Loss of Liberty and Property Interest in His Reputation, Business and Profession

There is no constitutional doctrine converting every defamation by a public official into a deprivation of liberty. *Paul* at 702. The allegation that Weber "has suffered in his reputation, trade and business and particularly in his ability to make career advancement . . ." does not sufficiently describe or allege an actual depriva-

---

fourth amendment violations in surveillance activities. *Giancana* is totally inapposite. *Giancana* vacated a district court's judgment for lack of jurisdiction where the plaintiff failed to allege damages of $10,000 or more. In doing so, the seventh circuit expressly refused to reach the other points raised. *Id.* at 370. The appellant's brief grossly misstates the law when it asserts this holding "left intact a lower court ruling that surveillance of plaintiff Giancana violated his Fourth Amendment rights."

tion of constitutionally protected rights resulting from the defendants' acts.[4] "The mere possibility of remote or speculative future injury or invasion of rights will not suffice." *Reichenberg, r v. Pritchard,* 660 F.2d 280, 285 (7th Cir. 1981).

To conclude, Weber has failed to plead a deprivation of federal or constitutional rights. Therefore, we affirm the dismissal of Weber's 42 U.S.C. § 1983 claims against the City of Cedarburg.[5]

*By the Court.*—Judgment affirmed.

---

[4] Weber's complaint, which alleges he "has been embarrassed, humiliated and mentally and emotionally upset [and] has suffered in his reputation, trade and business and particularly in his ability to make career advancement . . ." properly alleges an actual injury under a state claim for defamation in the form of personal humiliation and mental suffering. *See Denny v. Mertz,* 106 Wis. 2d 636, 659, 318 N.W.2d 141, 152, *cert. denied,* 459 U.S. 883 (1982). However, even if a complaint states a proper cause of action under state law, it does not follow that it states a good claim under section 1983 just because the defendants are public officers. *Jackson v. City of Joliet,* 715 F.2d 1200, 1203 (7th Cir. 1983). In order to survive a motion to dismiss, the complaint must allege that the act deprived Weber of a liberty or property interest protected by the constitution. Personal humiliation alone will not suffice as a constitutional deprivation. More must be alleged; it was not so alleged here. This is not to say that the officers' conduct here is condoned by us. To the contrary, if the conduct occurred, it was repulsive. On the state of the record we have, however, no valid cause of action exists.

[5] The City of Cedarburg filed a cross-appeal in this action, asserting that the trial court erred in denying the City's motion to dismiss the complaint due to a failure to allege conduct under color of state law. As we have affirmed the trial court's dismissal on other grounds, we will not address this issue. We do note, however, that a respondent may raise an issue in its brief without filing a cross-appeal "when all that is sought is the raising of an error which, if corrected, would sustain the judgment . . . ." *State v. Alles,* 106 Wis. 2d 368, 390, 316 N.W.2d 378, 388 (1982). As the City was merely raising an alternative ground for sustaining the trial court's dismissal of the complaint, the filing of a cross-appeal was unnecessary. Therefore, the City may not assess the costs of the cross-appeal against Weber.